Kenneth N. Klee (State Bar No. 63372)
David M. Stern (State Bar No. 67697)
Samuel M. Kidder (State Bar No. 284015)
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, Thirty-Ninth Floor
Los Angeles, California 90067
Telephone:     310-407-4000
Facsimile:     310-407-9090
Email:         kklee@ktbslaw.com
               dstern@ktbslaw.com
               skidder@ktbslaw.com

-and-

Howard Seife (*pro hac vice* pending)
Christy Rivera (*pro hac vice* pending)
Andrew Rosenblatt (*pro hac vice* pending)
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone:     212-408-5100
Facsimile:     212-541-5369
Email:         howard.seife@nortonrosefulbright.com
               christy.rivera@nortonrosefulbright.com
               andrew.rosenblatt@nortonrosefulbright.com

*Attorneys for NextEra Energy, Inc. et al.*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION; PACIFIC GAS AND ELECTRIC COMPANY,<br><br>          Debtors.<br><br>PG&E CORPORATION; PACIFIC GAS AND ELECTRIC COMPANY,<br><br>          Plaintiffs,<br><br>    vs.<br><br>FEDERAL ENERGY REGULATORY COMMISSION,<br><br>          Defendant. | USDC ND CA Case No. TBD<br><br>Adversary Proceeding No. 19-03003-DM<br><br>Chapter 11 Case Nos.    19-30088-DM &<br>                     19-30089-DM<br><br>Chapter 11<br>**NEXTERA ENERGY'S MOTION TO WITHDRAW REFERENCE OF ADVERSARY PROCEEDING; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date:     TBD<br>Time:              TBD<br>Judge & Crtrm.:   TBD |

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

**PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 5011 AND BANKRUPTCY LOCAL RULE 5011-2, THE CLERK OF THE BANKRUPTCY COURT IS TO TRANSMIT THIS MOTION FORTHWITH TO THE DISTRICT COURT.**

**TO THE COURT, TO PLAINTIFFS PG&E CORPORATION AND PACIFIC GAS AND ELECTRIC COMPANY, AND TO DEFENDANT FEDERAL ENERGY REGULATORY COMMISSION:**

NextEra Energy, Inc. and NextEra Energy Partners, L.P. (together, "NextEra") hereby move (this "Motion") to withdraw the reference of the above-captioned adversary proceeding (the "Adversary Proceeding"). This Motion is brought pursuant to 28 U.S.C. § 157(d), Rule 5011 of the Federal Rules of Bankruptcy Procedure, and Rule 5011-2 of the Bankruptcy Local Rules for the Northern District of California.

The Motion is based on the attached Memorandum of Points and Authorities, the concurrently filed declaration of Michael Sheehan in support of the Motion, the complete files and records of the referenced matters, the arguments of counsel and such other and further matters as the Court may consider at or before any hearing on this Motion.

DATED: January 30, 2019

*/s/ David M. Stern*
_____
Kenneth N. Klee
David M. Stern
Samuel M. Kidder
KLEE, TUCHIN, BOGDANOFF & STERN LLP

*Attorneys for NextEra Energy, Inc. et al.*

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

I. PRELIMINARY STATEMENT ................................................................................. 1

II. JURISDICTION AND VENUE ............................................................................... 2

III. BACKGROUND ..................................................................................................... 2

    A.    NextEra's Power Purchase Agreements With the Debtors ...................... 2

    B.    The FERC Proceeding ................................................................................. 3

    C.    The Chapter 11 Filing, Adversary Proceeding, And Preliminary Injunction Motion ....................................................................................... 4

IV. ARGUMENT ........................................................................................................... 5

    A.    Standing to Seek Withdrawal of the Motion ........................................... 5

    B.    Legal Standard For Withdrawal Of The Reference ................................. 6

    C.    Legal Background Regarding Jurisdictional Issues ................................. 7

        1.    FERC's Jurisdiction Under the FPA ............................................ 7

        2.    Rejection In Bankruptcy Cannot Invade FERC's Authority Over The Rates, Terms, And Conditions Of Wholesale Contracts ............ 10

        3.    Jurisdiction To Review FEC Orders ........................................... 14

    D.    Withdrawal Of The Reference Of These Important And Unsettled Issues Is Mandatory ............................................................................................. 15

V. CONCLUSION ....................................................................................................... 17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ames Dep't Stores, Inc. v. Lumbermens Mut. Cas. Co. (In re Ames Dep't Stores, Inc.)*,
    512 B.R. 736 (S.D.N.Y. 2014) ............................................................................7

*Ark. La. Gas Co. v. Hall*,
    453 U.S. 571 (1981) ...........................................................................................8

*Blumenthal v. NRG Power Mktg., Inc.*,
    103 FERC ¶ 61,344 (2003) ..........................................................................10, 11

*Blumenthal v. NRG Power Mktg. Inc.*,
    104 FERC ¶ 61,211 (2004) .......................................................................9, 10, 12

*Bos. Edison Co. v. FERC*,
    856 F.2d 362 (1st Cir. 1988) ..............................................................................9

*In re Bos. Generating, LLC*,
    2010 WL 4616243 (S.D.N.Y. Nov. 12, 2010) ..............................................13, 15

*In re Cajun Elec. Power Coop.*,
    185 F.2d 446 (5th Cir. 1999) ............................................................................11

*Cal. Save Our Streams Council, Inc. v. Yeutter*,
    887 F.2d 908 (9th Cir. 1989) ............................................................................14

*In re Calpine Corp.*,
    337 B.R. 27 (S.D.N.Y. 2006) ...................................................................12, 13, 15

*City of Tacoma v. Taxpayers of Tacoma*,
    357 U.S. 320 (1958) .........................................................................................14

*Fed. Power Comm'n v. Sierra Pac. Power Co.*,
    350 U.S. 348 (1956) ...........................................................................................7

*FERC v. Elec. Power Supply Ass'n*,
    136 S. Ct. 760 (2016) ......................................................................................1, 8

*FirstEnergy Solutions Corp. v. FERC (In re FirstEnergy Solutions Corp.)*,
    2018 WL 2315916 (Bankr. N.D. Ohio May 18, 2018) ..........................................13

*Gulf States Utils. Co. v. Ala. Power Co.*,
    824 F.2d 1465 (5th Cir. 2004) .....................................................................12, 13

ii

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

*In re Innovative Commc'n Corp.*,
   2010 WL 2868500 (D.V.I. July 20, 2010) ........................................................6

*Cal. ex rel. Lockyer v. Dynegy, Inc.*,
   375 F.3d 831 (9th Cir. 2004) ........................................................................9

*In re Mirant Corp.*,
   378 F.3d 511 (5th Cir. 2004) ........................................................12, 13, 15

*Miss. Power & Light Co. v. Miss. ex. rel. Moore*,
   487 U.S. 354 (1988) ....................................................................................8, 9

*Montana-Dakota Utils. Co. v. Nw. Pub. Serv. Co.*,
   341 U.S. 246 (1951) ....................................................................................8, 9

*Morgan Stanley Capital Grp. Inc. v. Pub. Util. Dist. No. 1 of Snohomish Cty.*,
   554 U.S. 527 (2008) ..................................................................................9, 10

*Nantahala Power and Light Co. v. Thornburg*,
   476 U.S. 953 (1986) ....................................................................................8, 9

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) ......................................................................................16

*In re NRG Energy, Inc. v. Blumenthal*,
   2003 WL 21507685 (S.D.N.Y. June 30, 2003) ....................................11, 15

*In re Nw. Territorial Mint, LLC*,
   2017 WL 568821 (W.D. Wash. Feb. 13, 2017) ..........................................6

*Pa. Water & Power Co. v. Fed. Power Comm'n.*,
   343 U.S. 414 (1952) ........................................................................................9

*In re Permian Basin Area Rate Cases*,
   390 U.S. 747 (1968) ........................................................................................9

*Pub. Serv. Comm'n v. Fed. Power Comm'n*,
   543 F.2d 757 (D.C. Cir. 1974) ........................................................................9

*Pub. Util. Dist. No 1 of Grays Harbor Cty. v. Idacorp Inc.*,
   379 F.3d 641 (9th Cir. 2004) ......................................................................10

*Sec. Farms v. Int'l Bhd. of Teamsters*,
   124 F.3d 999 (9th Cir. 1997) ........................................................................7

**Statutes**

11 U.S.C. § 101 ....................................................................................1, 6

11 U.S.C. § 365(a) ....................................................................................10

iii

16 U.S.C. § 791a ...................................................................................................1

16 U.S.C. § 824 ......................................................................................................8

16 U.S.C. § 824(a) ..................................................................................................7

16 U.S.C. § 824(d) .........................................................................................1, 3, 8

16 U.S.C. § 824d(a) ................................................................................................8

16 U.S.C. § 824(e) .............................................................................................3, 8

16 U.S.C. § 825*l*(a) ...........................................................................................14

16 U.S.C. § 825*l*(b) .......................................................................................4, 14

28 U.S.C. § 157(a) ..................................................................................................7

28 U.S.C. § 157(d) ...................................................................................... *passim*

28 U.S.C. § 1334 .....................................................................................................2

28 U.S.C. § 1334(b) ................................................................................................6

28 U.S.C. § 1408 .....................................................................................................2

28 U.S.C. § 1409 .....................................................................................................2

**Federal and Local Rules**

BANKR. L. R. 5011-2 ..............................................................................................2

FED. R. BANKR. P. 5011 ..........................................................................................2

FED. R. BANKR. P. 7024 ..........................................................................................5

FED. R. CIV. P. 24 ...................................................................................................5

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

This is a textbook case for mandatory withdrawal of the reference under 28 U.S.C. § 157(d). The Adversary Proceeding[1] is a collateral attack on the Federal Energy Regulatory Commission's ("FERC" or the "Commission") January 25, 2019 order declaring that the Debtors are prohibited from rejecting their wholesale power supply contracts absent FERC approval and, more generally, on FERC's jurisdiction under the Federal Power Act, 16 U.S.C. § 791a *et seq.* (the "FPA"). The Debtors seek to bar enforcement of the FERC Order, in order to frustrate the FPA's comprehensive regulatory scheme, and the exclusive appellate review process set forth in the FPA by enjoining, *inter alia*, "any entity's attempt to enforce the FERC Order, and any action by FERC, or any other entity, that would attempt to" give effect to FERC's concurrent jurisdiction over wholesale power supply contracts. *See* Adversary Compl. ¶ 2.

The issues raised in the Adversary Proceeding—namely, whether, and under what conditions, a bankruptcy court has the authority to authorize rejection under the Bankruptcy Code[2] of contracts subject to FERC's jurisdiction (such as the NextEra PPAs), and whether the bankruptcy court has jurisdiction over the Debtors' attempted end run around the appellate procedures set forth in the FPA— require material consideration of non-bankruptcy federal laws regulating activities affecting interstate commerce, including Section 205 of the FPA, 16 U.S.C. § 824d. As PG&E itself stated in 2005, when it successfully sought to withdraw the reference with respect to a virtually identical issue in the bankruptcy case of Calpine Corporation: "this Court must withdraw the reference . . . because resolution of this matter necessarily requires, as a threshold matter, consideration of the interrelationship between the Bankruptcy Code and federal non-bankruptcy laws regulating organizations or activities affecting interstate commerce, namely

---

[1] Capitalized terms used but not defined in this Preliminary Statement have the meanings ascribed to them above or in subsequent sections of this Memorandum of Law, as applicable.

[2] The "Bankruptcy Code" refers to title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

the [FPA] . . . ."[3]  Accordingly, as other courts have repeatedly held—and consistent with PG&E's prior position—the issues raised in the Adversary Proceeding can only be resolved by an Article III court.

## II.  JURISDICTION AND VENUE

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(d) and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The bases for the relief requested in this Motion are 28 U.S.C. § 157(d), Rule 5011 of the Federal Rules of Bankruptcy Procedure, and Rule 5011-2 of the Bankruptcy Local Rules for the Northern District of California.

## III.  BACKGROUND

### A.   NextEra's Power Purchase Agreements With the Debtors

NextEra is one of the largest electric power and energy infrastructure companies in North America and a leader in the renewable energy industry.  *See* Declaration of Michael Sheehan filed concurrently herewith (the "Sheehan Declaration"), ¶ 4.  It is the world's largest operator of wind and solar projects and employs approximately 14,000 people.  *Id.*

NextEra Energy, Inc. and NextEra Energy Partners, L.P. are the parent companies of several subsidiaries[4] that sell wind and/or solar renewable energy to Debtor Pacific Gas and Electric Company ("PG&E").  *Id.* ¶ 5.  NextEra's subsidiaries entered into four solar power purchase agreements and four wind power purchase agreements (collectively, the "NextEra PPAs") with PG&E between 2009 and 2015, with terms ranging from 20 to 25 years.  *Id.*

Under the terms of each NextEra PPA, a subsidiary of NextEra agreed to develop, own, and operate a generating facility and sell the energy produced thereby to PG&E to enable PG&E

---

[3]  *In re Calpine Corp.*, No. 1:05-cv-10861-RCC, *Memorandum of Law in Support of Pacific Gas and Electric Company's Motion to Withdraw Reference as to Motion of the Debtors for Entry of an Order Authorizing Debtors to Reject Certain Energy Contracts* (S.D.N.Y. Dec. 30, 2005) (E.C.F. No. 2).  The present case is even more supportive of withdrawal of the reference than *Calpine* due to the issuance of the FERC Order (defined and discussed below).

[4]  The subsidiary companies with power purchase agreements with PG&E are Desert Sunlight Holdings, LLC; Shafter Solar, LLC; Genesis Solar, LLC; Westside Solar, LLC; Vasco Wind, LLC; North Sky River Energy, LLC; FPL Energy Montezuma Wind, LLC; and NextEra Energy Montezuma II Wind, LLC.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    to, among other things, meet its resource adequacy requirements prescribed by the California

2    Public Utilities Commission ("CPUC").[5]  *Id.* ¶ 6.  All of the NextEra PPAs were entered into

3    pursuant to market-based rate tariffs filed with and approved by FERC.  *Id.*

4    **B.      The FERC Proceeding**

5            On January 13, 2019, the Debtors announced their intent to file for bankruptcy protection

6    "on or about January 29, 2019."[6]  Anticipating that the Debtors would, like certain other utilities

7    that have recently sought bankruptcy relief (as discussed below), seek to enjoin FERC from

8    exercising its exclusive jurisdiction over wholesale power supply contracts, NextEra initiated an

9    action before FERC.  *See NextEra Energy, Inc., et al. v. Pac. Gas & Elec. Co.*, Docket No. EL19-

10   35-000 (Jan. 18, 2019) (the "FERC Proceeding").  In its complaint (the "FERC Complaint," a

11   copy of which is attached as Exhibit A to the Sheehan Declaration), NextEra sought an order that

12   "if it files a petition for bankruptcy, PG&E may not abrogate, amend or reject in bankruptcy any

13   of the rates, terms and conditions of its wholesale power purchase agreements subject to FERC's

14   jurisdiction without first obtaining approval from FERC under FPA sections 205 or 206, 16 U.S.C.

15   §§ 824d, 824e."  FERC Compl. at p. 18.  More than a dozen other utility companies and

16   associations representing large utilities and solar and wind generating resources filed responses in

17   support of the FERC Complaint.  *See* FERC Order (as defined below) ¶¶ 11-12.

18           PG&E filed an Answer to the FERC Complaint in which it argued, *inter alia*, that "any

19   harm to NextEra is purely speculative" because the bankruptcy filing had yet to occur.  *See*

20   *Answer of Pacific Gas and Electric Company* (a copy of which is attached as Exhibit B to the

21   Sheehan Declaration) at p.2.  PG&E further argued that "rejection of a contract in bankruptcy is

22

23

24   _____

25   [5]  CPUC adopted the Resource Adequacy Policy framework to ensure the reliability of electric
         service in California.  Under its resource adequacy program, CPUC requires load-serving

26       entities to demonstrate in both monthly and annual filings that they have purchased capacity
         commitments of no less than 115% of their peak loads.

27   [6]  *See* Current Report on Form 8-K dated January 13, 2019 of PG&E Corporation and Pacific Gas
         and Electric Company, available at

28       https://www.sec.gov/Archives/edgar/data/75488/000095015719000032/form8k.htm.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    nothing more than a simple breach of contract," and thus does not interfere with FERC's exclusive

2    authority to regulate wholesale power contracts.  *Id.* at p.3.

3        On January 25, 2019, FERC entered its *Order On Petition for Declaratory Order and

4    Complaint* (the "<u>FERC Order</u>," a copy of which is attached as Exhibit 1 to the Adversary

5    Complaint (as defined below)).  FERC began its analysis by acknowledging that "the law in this

6    area is unsettled.  Several courts have read the FPA and the Bankruptcy Code *in pari materia* and

7    reached different conclusions."  FERC Order ¶ 23.  FERC surveyed the voluminous case law

8    (discussed in more detail below) "acknowledg[ing] the broad scope of the Commission's statutory

9    jurisdiction over rates, terms, and conditions of wholesale electricity sales" and confirming that

10   FERC's "exclusive authority to determine the reasonableness of wholesale electricity rates also

11   extends to the rates, terms, and conditions of wholesale power agreements, as well as changes to

12   those agreements."  *Id.* ¶ 29.  "In short, under the FPA, the Commission determines the filed rate

13   and 'except for review of the Commission's orders, the courts can assume no right to a different

14   one.'"  *Id.* (quoting *Montana-Dakota Utils. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 252 (1951)).

15       Against this backdrop, FERC concluded that "to give effect to both the FPA and the

16   Bankruptcy Code, a party to a Commission-jurisdictional wholesale power purchase agreement

17   must obtain approval from **both** the Commission and the bankruptcy court to modify the filed rate

18   and reject the contract, respectively."  *Id.* ¶ 28 (emphasis added).  FERC reasoned that "a rejection

19   of a Commission-jurisdictional contract in a bankruptcy court alters the essential terms and

20   conditions of the contract and the filed rate; thus, this Commission's jurisdiction is implicated,

21   **and our approval is required**."  *Id.* ¶ 29 (emphasis added).

22       The FPA sets forth the process for seeking rehearing or appellate review of a FERC order.

23   As set forth in more detail in Part IV.C.3 below, the federal circuit courts of appeal have **exclusive**

24   jurisdiction to "affirm, modify, or set aside" orders entered by FERC.  16 U.S.C. § 825*l*(b).  As of

25   the date hereof, the Debtors have not sought rehearing or appellate review of the FERC Order.

26   **C.    The Chapter 11 Filing, Adversary Proceeding, And Preliminary Injunction Motion**

27       On January 29, 2019, the Debtors filed voluntary petitions for relief under chapter 11 of

28   the Bankruptcy Code.  That same day, the Debtors filed the *Debtors' Complaint for Declaratory*

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1 | *Judgment and Preliminary and Permanent Injunctive Relief* (Adv. Docket No. 1) (the "<u>Adversary</u>

2 | <u>Complaint</u>") and the *Debtors' Motion for Preliminary Injunction and Memorandum of Points and*

3 | *Authorities in Support* (Adv. Docket No. 2) (the "<u>Injunction Motion</u>").

4 |     The Debtors state that they have not made any decision about whether they will actually

5 | seek to reject any PPAs.  *See* Injunction Motion at p. 2.  Nevertheless, in the Adversary

6 | Complaint, they seek a declaratory judgment that the bankruptcy court has "exclusive jurisdiction

7 | over the Debtors' rights to reject any of its PPAs" and "further declaring that FERC does not have

8 | 'concurrent' jurisdiction, or any jurisdiction, over the determination of whether the Debtors'

9 | rejection of any of their PPAs should be authorized, and that the Debtors do not need to obtain

10 | approval from FERC to reject any of their PPAs," Adv. Compl., Prayer for Relief—all of which is

11 | directly contrary to the FERC Order.  They further seek to enjoin—on a preliminary and final

12 | basis—any enforcement of the FERC Order by NextEra, FERC, or any other entity, as well as

13 | "any action . . . that would attempt to divest or otherwise nullify or impede this [Bankruptcy]

14 | Court's exclusive authority to approve or deny" the Debtors' eventual rejection motion.  *Id.*; *see*

15 | *also* Injunction Motion at pp. 1-2.

16 |     Concurrently, NextEra is filing *NextEra Energy's Motion to Intervene in Adversary*

17 | *Proceeding* (the "<u>Intervention Motion</u>") pursuant to Rule 24 of the Federal Rules of Civil

18 | Procedure, made applicable to the Adversary Proceeding by Rule 7024 of the Federal Rules of

19 | Bankruptcy Procedure.  As set forth in more detail in the Intervention Motion, NextEra seeks to

20 | intervene in the Adversary Proceeding because, *inter alia*, adjudication of the Adversary

21 | Proceeding absent NextEra's participation could undermine the FERC Order to which NextEra is

22 | a party without affording NextEra an opportunity to be heard.  It would also impair or impede

23 | NextEra's ability to protect its significant interest in continued performance under the NextEra

24 | PPAs.  The Intervention Motion remains pending.

25 | **IV.  ARGUMENT**

26 | **A.**    **Standing to Seek Withdrawal of the Motion**

27 |     NextEra is aware that although there is scant authority whether a nonparty to an adversary

28 | proceeding can move to withdraw the reference, to the extent there is an explicit rule, it is that

5

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

only a party to an adversary proceeding has standing to seek withdrawal of the reference. *See In re Innovative Commc'n Corp.*, 2010 WL 2868500, at *3 (D.V.I. July 20, 2010).  To obtain standing, NextEra has sought to intervene in the Bankruptcy Court and firmly believes that, as a party to the FERC Order and an object of the debtors' preliminary injunction, its Intervention Motion should be granted.  It did not await that determination, given the speed with which the proceedings below are moving.

However, even in the absence of or in advance of the grant of the Intervention Motion, the District Court is not powerless, as it can withdraw the reference *sua sponte* either in toto or in order to consider NextEra's Intervention Motion.  *See*  28 U.S.C. § 157(d) ("The district court may withdraw, in whole or in part, any case or proceeding referred under this section, ***on its own motion*** or on timely motion of any party, for cause shown.") (emphasis added); *In re Nw. Territorial Mint, LLC*, 2017 WL 568821, at *1 (W.D. Wash. Feb. 13, 2017) ("A district court, *sua sponte* or on motion of any party, has the authority to withdraw the reference in whole or in part for cause shown.").

In this case, *sua sponte* relief is warranted, although it may prove unnecessary if the Bankruptcy Court acts on the Intervention Motion promptly, because the Debtors' failure to join NextEra is so irregular.  The Debtors are suing the independent governmental organization (FERC) that adjudicated NextEra's right to relief and have not named the very party (NextEra) that sought the relief.  As a result, if this Court believes, as it should (and as discussed below), that it needs to decide this dispute, given the dictates of 28 U.S. § 157 (mandating withdrawal of the reference "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce"), NextEra's temporary apparent lack of standing is no impediment.

**B.     Legal Standard For Withdrawal Of The Reference**

Under 28 U.S.C. § 1334(b), district courts have original jurisdiction of "all civil proceedings arising under title 11, or arising in or related to cases under title 11."  Each district court may, however, "provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy

judges for the district."  28 U.S.C. § 157(a).  Pursuant to this authority, the United States District Court for the Northern District of California issued an order referring all bankruptcy cases filed in the district to the bankruptcy court.  *See* Gen. Order No. 24, *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges [etc.]* (as amended Feb. 22, 2016).

However, pursuant to 28 U.S.C. § 157(d):

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.  The district court ***shall***, on timely notice of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (emphasis added).

The mandatory withdrawal provision of 28 U.S.C. § 157(d) "*mandates* withdrawal in cases requiring material consideration of non-bankruptcy federal law."  *Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1008 (9th Cir. 1997) (emphasis in original).  "The purpose of § 157(d) is to assure that an Article III judge decides issues calling for more than routine application of [federal laws] outside of the Bankruptcy Code."  *Ames Dep't Stores, Inc. v. Lumbermens Mut. Cas. Co. (In re Ames Dep't Stores, Inc.)*, 512 B.R. 736, 740 (S.D.N.Y. 2014) (citation omitted) (alteration in original).  Here, the Adversary Proceeding requires extensive consideration of the FPA, the Bankruptcy Code, and the interaction between the two federal statutory schemes.

## C.    Legal Background Regarding Jurisdictional Issues

### 1.    FERC's Jurisdiction Under the FPA

FERC has exclusive jurisdiction over the threshold issues raised in the Adversary Proceeding.  When enacting the FPA, Congress recognized that the provision of electric energy in interstate commerce is "affected with the public interest."  16 U.S.C. § 824(a).  The FPA created a comprehensive regulatory framework for protecting the public interest and entrusted a federal body (FERC) with the authority to implement that framework.  The "purpose" of FERC's authority under the FPA "is the protection of the public interest."  *Fed. Power Comm'n v. Sierra Pac. Power Co.*, 350 U.S. 348, 355 (1956).

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

7

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1   The core of FERC's regulatory responsibilities under the FPA is the exclusive authority to

2   regulate the rates, terms and conditions for interstate transmission and wholesale sales of

3   electricity.  *See* 16 U.S.C. §§ 824, 824d, 824e.  Although contracts involving the transmission and

4   wholesale sale of electricity are privately negotiated among the parties, those contracts must be

5   filed with FERC, and FERC is vested with the exclusive authority to ensure that rates, terms and

6   conditions in those agreements are "just and reasonable" and "not unduly discriminatory."  16

7   U.S.C. § 824d(a); *see also id*. § 824e(a).  FERC's jurisdiction to regulate those contracts is broad,

8   and it expressly includes not only rates but also "all rules and regulations affecting or pertaining to

9   such rates," any "rate, charge, classification or service," and "any rule, regulation, or contract

10   relating thereto." *Id.*; *see, e.g.*, *FERC v. Elec. Power Supply Ass'n*, 136 S. Ct. 760, 773-74 (2016)

11   ("FPA delegates responsibility to FERC to regulate . . . wholesale rates and the panoply of rules

12   and practices affecting them. . . . FERC has the authority—and, indeed, the duty—to ensure that

13   rules or practices 'affecting' wholesale rates are just and reasonable" (citation omitted)).

14   In light of this comprehensive regulatory regime governing rates, terms and conditions of

15   wholesale electricity contracts, the U.S. Supreme Court has confirmed that the FPA grants FERC

16   "an opportunity *in every case* to judge the reasonableness of the rate." *Ark. La. Gas Co. v. Hall*,

17   453 U.S. 571, 582 (1981) (emphasis added).  Under the FPA, FERC has "exclusive authority to

18   determine the reasonableness of wholesale [electricity] rates." *Miss. Power & Light Co. v. Miss.*

19   *ex. rel. Moore*, 487 U.S. 354, 371 (1988).

20   FERC's broad and exclusive authority over rates has led to the "filed rate doctrine." *See,*

21   *e.g.*, *Montana-Dakota Utils. Co. v. Nw. Pub. Serv. Co*., 341 U.S. 246 (1951).  Under the filed rate

22   doctrine, a party "can claim no rate as a legal right that is other than the filed rate, whether fixed or

23   merely accepted by [FERC], and not even a court can authorize commerce in the commodity on

24   other terms." *Id*. at 251.  This doctrine "ensure[s] that federal courts respect the decisions of

25   federal administrative agencies" and recognizes that FERC "alone is empowered to make that

26   judgment [of reasonableness], and until it has done so, no rate other than the one [approved by

27   FERC] may be charged." *Nantahala Power and Light Co. v. Thornburg*, 476 U.S. 953, 963-64

28   (1986) (first alteration in original) (citation omitted).  Under the filed rate doctrine, FERC

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1  determines the filed rate and "except for review of the Commission's orders, the courts can

2  assume no right to a different one."  *Montana-Dakota Utils.*, 341 U.S. at 252.

3          Once FERC accepts or approves a filed rate as just and reasonable, the filed rate has the

4  force of law and is the "equivalent of a federal regulation."  *See Cal. ex rel. Lockyer v. Dynegy,*

5  *Inc.*, 375 F.3d 831, 839 (9th Cir. 2004) (citation omitted).  In other words, "the filed rate . . . is to

6  be treated as though it were a statute, binding upon the seller and purchaser alike."  *Bos. Edison*

7  *Co. v. FERC*, 856 F.2d 362, 372 (1st Cir. 1988).  When a wholesale contract has been filed with

8  and accepted by FERC, there is a duty to comply with the terms and conditions of the contract that

9  arises "not from the private law of contract" but from FERC's authority itself.  *Pa. Water &*

10  *Power Co. v. Fed. Power Comm'n.*, 343 U.S. 414, 423 (1952); *see Blumenthal v. NRG Power*

11  *Mktg. Inc.*, 104 FERC ¶ 61,211 at ¶ 54 (2004) (FERC's authority under the FPA "is independent

12  of authority arising from the contract").

13          Because FERC's authority to regulate jurisdictional contracts under the FPA extends

14  beyond rates, the filed rate doctrine also encompasses more than just FERC-approved rates, but

15  also other terms and conditions in FERC-approved wholesale contracts.  *See, e.g.*, *Miss. Power &*

16  *Light*, 487 U.S. at 371 ("FERC's exclusive jurisdiction applies not only to rates but also to power

17  allocations that affect wholesale rates"); *Nantahala Power & Light Co.*, 476 U.S. 953, 966-67

18  (1986) ("The filed rate doctrine is not limited to 'rates' *per se* . . . ." (citation omitted)).  In

19  particular, a change to the duration of a filed contract is a change to a FERC-approved term that

20  falls within FERC's jurisdiction and the scope of the filed rate doctrine.  *See In re Permian Basin*

21  *Area Rate Cases*, 390 U.S. 747, 822 (1968) ("The regulatory system created by the Act . . .

22  contemplates abrogation of these agreements only in circumstances of unequivocal public

23  necessity."); *Pa. Water & Power*, 343 U.S. at 423.

24          The FPA's "just and reasonable" standard is a broad and flexible standard that "is

25  obviously incapable of precise judicial definition."  *Morgan Stanley Capital Grp. Inc. v. Pub. Util.*

26  *Dist. No. 1 of Snohomish Cty.*, 554 U.S. 527, 532 (2008).  This standard requires FERC to apply

27  specialized regulatory expertise and evaluate "all factors bearing on the public interest."  *Pub.*

28  *Serv. Comm'n v. Fed. Power Comm'n*, 543 F.2d 757, 785 (D.C. Cir. 1974) (citation omitted).  An

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    important public interest considered by FERC is the policy goal of promoting the development of

2    new energy supplies including renewable resources, which is advanced by providing rate certainty

3    to energy suppliers.  *See also Blumenthal*, 104 FERC ¶ 61,211 at ¶ 33 (quoting *United States Gas*

4    *Pipe Line Co. v. Mobile Gas Service Corp*., 350 U.S. 332, 244 (1956)) ("By preserving the

5    integrity of contracts, it permits the stability of supply arrangements which all agree is essential to

6    the health of the . . . industry.").

7          Wholesale electricity contracts may be filed directly with FERC under the FPA or they

8    may be negotiated under a filed and approved market-based rate tariff that does not require the

9    utility to separately file the individual agreement.  But either way, FERC's authority to regulate

10   the rates, terms and conditions of the contract is exclusive and subject to the filed rate doctrine.

11   Courts have expressly held that contracts entered into pursuant to market-based rate authority

12   remain subject to the filed rate doctrine and FERC's exclusive jurisdiction under the FPA.  *See*

13   *Morgan Stanley*, 554 U.S. at 531; *Pub. Util. Dist. No 1 of Grays Harbor Cty. v. Idacorp Inc*., 379

14   F.3d 641, 650 (9th Cir. 2004); *Blumenthal v. NRG Power Mktg., Inc*., 103 FERC ¶ 61,344, at ¶ 46

15   (2003).

16         In sum, a wealth of precedent—including numerous U.S. Supreme Court decisions—holds

17   that FERC has exclusive jurisdiction to regulate the rates, terms, and conditions of contracts

18   involving the wholesale sales of electricity and that FERC's rulings on such rates, terms, and

19   conditions have the force of regulation that cannot be collaterally attacked in other proceedings.

20   This precedent—which applies equally both to wholesale contracts filed with FERC and to

21   wholesale contracts entered into pursuant to market-based rate authority—recognizes FERC's

22   specialized expertise and broad responsibility to consider and balance a broad range of public

23   interests and zealously protects that responsibility from infringement by courts or other agencies.

24         **2.      Rejection In Bankruptcy Cannot Invade FERC's Authority Over The Rates,
                    Terms, And Conditions Of Wholesale Contracts**

25         Section 365(a) of the Bankruptcy Code authorizes a bankruptcy court to assume or reject

26   any executory contract of the debtor.  11 U.S.C. § 365(a).  If a contract is rejected, the rejection

27   acts as a breach that gives the counterparties a general, unsecured claim for damages against the

28

estate.  *Id.* § 365(g).  A debtor has the initial responsibility for determining which contracts should be assumed and which should be rejected, and the debtor's decisions generally are reviewed by the bankruptcy court under the "business judgment rule" or a higher standard.

Although the Bankruptcy Code gives bankruptcy courts broad authority over a bankrupt entity's estate, the court cannot exercise this authority in a way that invades FERC's exclusive jurisdiction under the FPA.  In particular, a bankruptcy court's authority to reject executory contracts—and replace the contract rights with an unsecured breach of contract claim against the estate—does not and cannot divest FERC of its exclusive responsibility over the rates, terms, and conditions in a wholesale electricity contract.  As the court stated in *In re Cajun Elec. Power Coop.*, 185 F.2d 446 (5th Cir. 1999), FERC is "entrusted to safeguard the compelling public interest in the availability of electric service at reasonable rates" and "[t]hat public interest is no less compelling during the pendency of a bankruptcy proceeding than at other times."  *Id.* at 453 n.11.

FERC long ago recognized that a bankruptcy court exercising its authority to reject contracts may not invade FERC's exclusive jurisdiction over wholesale rates under the FPA.  In *Blumenthal v. NRG Power Mktg., Inc.*, 103 FERC ¶ 61,344, *reh'g denied*, 104 FERC ¶ 61,211 (2003) ("NRG"), FERC held that a bankruptcy court's approval of a request to reject a wholesale power contract "does not preclude the Commission from making an independent determination as to whether [the utility] must continue to provide service" under the contract.  103 FERC ¶ 61,344 at ¶ 1.  FERC reasoned that "the Bankruptcy Code clearly signals that regulatory agencies, such as the Commission, retain their full rights to review matters within their regulatory ambit during bankruptcy," *id.* at P 47, and that "governing precedent" supports the view that FERC "may take regulatory action that it deems appropriate under the FPA (even if that action conflicts with a course taken by a bankruptcy court) so long as that action serves a regulatory purpose," *id.* at P 48. In the NRG bankruptcy proceeding, the bankruptcy court respected FERC's stated view of its statutory responsibilities and did not challenge the Commission's ruling.  *See In re NRG Energy, Inc. v. Blumenthal*, 2003 WL 21507685, at *4 (S.D.N.Y. June 30, 2003).

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

A year after the *NRG* decision, the Fifth Circuit reached a different conclusion on this issue in *In re Mirant Corp.*, 378 F.3d 511 (5th Cir. 2004). There, the court ruled that a bankruptcy court's rejection of a wholesale power contract does not unlawfully invade FERC's exclusive jurisdiction. The court acknowledged that "[i]t is clear that FERC has the exclusive authority to determine wholesale rates," *id.* at 519; that FERC approval is needed to "modify the rates" or "completely abrogate" the agreement, *id.*; and that the FPA preempts claims "that challenge a filed rate," *id.* However, the court concluded that the bankruptcy court's rejection of a wholesale power contract does not invade FERC's exclusive jurisdiction because it merely constitutes a "breach" of the contract which allows the counterparty to bring an unsecured breach of contract claim against the estate. *Id.* at 519-520. In reaching this conclusion, the court relied on a Fifth Circuit decision in *Gulf States Utils. Co. v. Ala. Power Co.*, 824 F.2d 1465, 1471-73 (5th Cir. 2004), which, according to the *Mirant* panel, held that a court may alter a FERC-jurisdictional contract when the breach of contract claim is based on "another rationale" other than a challenge to the rate and the claim only indirectly affects the rate. *Id.* The court also relied on the fact that, in the Bankruptcy Code, Congress did not create an express exception from rejection for contracts subject to FERC's regulation. *Id.* at 521. Somewhat contradictorily, the *Mirant* court held that "[u]se of the business judgment standard would be inappropriate in this case because it would not account for the public interest inherent in the transmission and sale of electricity," *id.* at 525, meaning that the Bankruptcy Court would be charged with having to make the determinations generally entrusted to the FERC, notwithstanding its lack of specialized expertise.

After *Mirant*, federal courts outside the Fifth Circuit have rejected the *Mirant* decision and protected the Commission's exclusive jurisdiction over wholesale rates in bankruptcy proceedings. In *In re Calpine Corp.*, 337 B.R. 27 (S.D.N.Y. 2006), the court, notably at PG&E's request, declined to follow *Mirant*. In a thorough and well-reasoned decision, the court held that FERC has exclusive jurisdiction to regulate the rates, terms and conditions of wholesale electricity contracts and that a bankruptcy court may not invade FERC's jurisdiction by rejecting wholesale contracts. The court found extensive precedent governing "FERC's vast authority over filed rate energy contracts" but "little evidence of congressional intent to limit FERC's regulatory authority"

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    in the Bankruptcy Code.  *Id.* at 33.  The court directly rejected the argument in *Mirant* that the

2    bankruptcy court does not interfere with the Commission's jurisdiction when it rejects a wholesale

3    contract and authorizes an unsecured breach of contract claim, stating that such circumstances are

4    not similar to "a run-of-the-mill contract dispute."  *Id*. at 36.  The court also found that the Fifth

5    Circuit cases relied on by the court in *Mirant* (including the *Gulf States* case) "have no Second

6    Circuit corollaries" and that, contrary to *Gulf States*, the court does not construe the filed rate

7    doctrine "so narrowly as to just reach modifications of the rate."  *Id*. at 38.

8         Subsequently, the same court that decided *Calpine* again ruled that a bankruptcy court's

9    authority to reject an executory contract does not divest FERC of its exclusive authority to

10   regulate the rates, terms and conditions of a gas transportation agreement subject to the FPA's

11   provisions and FERC's jurisdiction.  *See In re Bos. Generating, LLC*, 2010 WL 4616243

12   (S.D.N.Y. Nov. 12, 2010).  In that case, the court recognized that the bankruptcy court had the

13   authority to reject a contract, but held that "the Debtors must also obtain a ruling from FERC that

14   abrogation of the contract does not contravene the public interest."  *Id*. at *1.  Because FERC has

15   exclusive authority to make the public interest determination, the court further ruled that if "FERC

16   does not approve the Debtors' rejection of the [contract], the Debtors may not reject the contract."

17   *Id*. at *3.  The court concluded that it did not matter whether FERC's ruling occurs before or after

18   the rejection ruling, only that FERC must rule before the contract can be rejected.  *Id*. ("Whether

19   the bankruptcy court and FERC review the proposed rejection concurrently or serially is of no

20   consequence.").[7]

21   ────────────────────

22   [7]  More recently, a bankruptcy court concluded that the automatic stay provision of the
23   Bankruptcy Code and the court's power to grant equitable relief supported its decision to
     preliminarily enjoin FERC from requiring the debtor to continue performing under certain
24   wholesale power contracts that the debtor sought to reject in bankruptcy.  *See FirstEnergy
     Solutions Corp. v. FERC (In re FirstEnergy Solutions Corp.)*, 2018 WL 2315916 (Bankr. N.D.
25   Ohio May 18, 2018).  The bankruptcy court's decision is currently on appeal to the Sixth Circuit
     Court of Appeals, with briefing set to commence on February 26, 2019.  *See In re FirstEnergy
26   Solutions Corp.*, Case Nos. 18-3787, 18-3788, 18-4095, 18-4097, 18-4107, 18-4110, *Letter
     Setting Briefing Schedule* (6th Cir. Jan. 17, 2019).  Unlike the *FirstEnergy* case, here FERC has
27   already issued an order finding that it has concurrent jurisdiction with the bankruptcy court and
     that FERC's approval is required in connection with rejection of a FERC-jurisdictional contract
28   in bankruptcy.  *See* FERC Order at ¶ 29.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1   The recent FERC Order flows from the same reasoning.  FERC concluded that while the

2   Bankruptcy Court is not precluded from authorizing a debtor to reject a FERC-jurisdictional

3   contract, the only way to "give effect to both the FPA and the Bankruptcy Code" is to require that

4   the debtor *also* obtain FERC approval.  FERC Order ¶ 28.  The Debtors' attempt to flout the

5   FERC Order and the FPA plainly raises grave issues of non-bankruptcy federal law.

6          **3.     Jurisdiction To Review FEC Orders**

7          The FPA sets forth the process for obtaining appellate review of a FERC order.  First, any

8   utility or other person "aggrieved by an order issued by the Commission in a proceeding under this

9   Act" who is a party to such proceeding may apply to FERC for rehearing.  16 U.S.C. § 825*l*(a).

10  Such application for rehearing must be made within 30 days of entry of the FERC order.  *Id.*  The

11  FPA provides that "[n]o proceeding to review any orders of the Commission shall be brought by

12  any entity unless such entity shall have made application to the Commission for a rehearing

13  thereon."  *Id.*  Within 60 days after FERC rules on the application for rehearing, the party may

14  seek review of the FERC order in the United States Court of Appeals by filing a petition for

15  review.  *Id.* § 825*l*(b).[8]

16         Upon the filing of such petition, the circuit court has "exclusive" jurisdiction to "affirm,

17  modify, or set aside" the applicable FERC order.  *Id.*; *see also City of Tacoma v. Taxpayers of*

18  *Tacoma*, 357 U.S. 320, 336 (1958) ("Congress in [§ 825*l*] prescribed the specific, complete and

19  exclusive mode for judicial review of the Commission's orders."); *Cal. Save Our Streams*

20  *Council, Inc. v. Yeutter*, 887 F.2d 908, 911 (9th Cir. 1989) (describing the "strict jurisdictional

21  limits imposed by Congress" and concluding that district court erred in not dismissing challenge to

22  FERC order for lack of jurisdiction).

23

24

25

26

---

27  [8]  The party may seek review in "any circuit wherein the licensee or public utility to which the

28  order relates is located or has its principal place of business, or in the United States Court of
    Appeals for the District of Columbia."  *Id.*

**D.     Withdrawal Of The Reference Of These Important And Unsettled Issues Is Mandatory**

Here, resolution of the Adversary Proceeding will require substantial and material consideration of at least three issues of non-bankruptcy federal law such that withdrawal of the reference is mandatory: (1) whether the exclusive review process set forth in the FPA bars the Debtors from collaterally attacking the FERC Order in the bankruptcy court; (2) whether the bankruptcy court can unilaterally order the rejection of the NextEra PPAs (or other wholesale power contracts subject to FERC's authority) notwithstanding FERC's exclusive jurisdiction over the rates, terms, and conditions for the sale of electricity; and (3) whether and to what extent the standard for rejection should include the consideration of the "public interest," as well as which forum should consider the public interest question.  As discussed above, the latter two questions are ones on which the case law is unsettled and on which there is no binding Ninth Circuit precedent.  On the first question, there is no disagreement on the proper path for reviewing a FERC Order, although the Debtors seek to unsettle that law by their actions here.

Numerous portions of the Adversary Complaint expressly recognize that the Adversary Proceeding requires substantial consideration of non-bankruptcy federal law.  For example, the Debtors state that "FERC Action raises serious constitutional questions affecting this Court's exclusive jurisdiction over the Debtors' estate," Adv. Compl. ¶ 33, and offer interpretations of both the FPA and the Bankruptcy Code that supposedly resolve these questions in the Debtors' favor, *id.* ¶¶ 32-34.  For present purposes, suffice it to say that NextEra strongly disagrees with the Debtors' interpretation, as have multiple courts.  *See Boston Generating*, 2010 WL 4616243, at *1; *Calpine*, 337 B.R. at 36; *NRG Energy*, 2003 WL 21507685, at *4.

In light of these important jurisdictional questions, withdrawal of the reference is mandatory.  Notably, in each of the *Calpine*, *Mirant*, and *Boston Generating* cases, the district court recognized that consideration of non-bankruptcy was required and withdrew the reference of the debtors' proposed motions to reject FERC-regulated contracts.[9]

---

[9]   *See Calpine*, 337 B.R. at 31; *In re Mirant Corp.*, No. 4:03-cv-00944 (N.D. Tex. Oct. 9, 2003) (E.C.F. No. 7); *Boston Generating*, 2010 WL 4616243, at *2.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

Indeed, in the *Calpine* case, when the debtor filed a motion to reject its wholesale power contract with PG&E, PG&E moved to withdraw the reference and have the U.S. District Court for the Southern District of New York decide the matter, arguing that:

> [W]ithdrawal of the reference is mandated here.  *First*, in order to resolve the Rejection Motion, the court must determine, as a threshold issue, whether it can order the rejection of the PG&E Contract notwithstanding FERC's exclusive jurisdiction over the rates, terms and conditions for the sale of electricity at wholesale in interstate commerce.  *Second*, assuming the court has the authority to authorize the rejection of the PG&E Contract, the court must also determine whether the standard for rejection should include the consideration of the public interest so as to harmonize the federal bankruptcy standard with the federal energy law requirement that a contract with fixed terms cannot be unilaterally modified absent a showing that the modification is in the public interest (as discussed below). These are precisely the types of issues Congress envisioned must be resolved by Article III courts when it enacted the mandatory withdrawal provisions of 28 U.S.C. § 157(d).  Accordingly, the reference of the Rejection Motion must be withdrawn.[10]

The district court granted PG&E's motion and entered an order withdrawing the reference.[11]

PG&E's statement of the law was correct in 2005 and remains correct today.  Although PG&E's past position may disadvantage it now, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position…."  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).  The reference must be withdrawn and the Debtors should not be heard to argue otherwise.[12]

*[Remainder of page intentionally left blank]*

---

[10]   *In re Calpine Corp.*, No. 1:05-cv-10861-RCC, *Memorandum of Law in Support of Pacific Gas and Electric Company's Motion to Withdraw Reference as to Motion of the Debtors for Entry of an Order Authorizing Debtors to Reject Certain Energy Contracts* (S.D.N.Y. Dec. 30, 2005) (E.C.F. No. 2).

[11]   *In re Calpine Corp.*, No. 1:05-cv-10861-RCC, *Order* (S.D.N.Y. Jan. 5, 2006) (E.C.F. No. 11).

[12]   Alternatively, the Court should exercise its discretion under 28 U.S.C. § 157(d) to withdraw the reference of the Adversary Proceeding "for cause shown."

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

## V.  CONCLUSION

For the foregoing reasons, NextEra respectfully requests that the District Court enter an order withdrawing the reference of the Adversary Proceeding and granting such other and further relief as is just and proper under the circumstances.

DATED: January 30, 2019

/s/ David M. Stern
_____
Kenneth N. Klee
David M. Stern
Samuel M. Kidder
KLEE, TUCHIN, BOGDANOFF & STERN LLP

-and-

Howard Seife (*pro hac vice* pending)
Christy Rivera (*pro hac vice* pending)
Andrew Rosenblatt (*pro hac vice* pending)
NORTON ROSE FULBRIGHT US LLP

*Attorneys for NextEra Energy, Inc. et al.*